MIHALOVITCH, FLETCHER & Co. *v.* UNITED STATES (No. 1060).[1]

CHERRIES IN BRINE.

A saline solution used in packing fruit is used as a preservative simply and fruit of the kind is "in brine" in the language of paragraph 559, tariff act of 1909. Without undertaking to fix what percentage of salt in a solution will make that solution brine, the evidence here does not warrant the conclusion that the fruit of this importation was "in brine."

United States Court of Customs Appeals, April 22, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30941 (T. D. 33018).

[Affirmed.]

*Brooks & Brooks* (*F. W. Brooks, jr.,* of counsel) for appellants.
*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise the subject of this appeal consists of cherries, a part of which were imported July 29 and a part September 11, 1907. They were assessed by the collector at 2 cents per pound under paragraph 262 of the tariff act of 1897 as edible fruit, and are claimed by the importers to be entitled to free entry as fruit in brine under paragraph 559 of the same act, which reads as follows:

559. Fruits or berries, green, ripe, or dried, and fruits in brine, not specially provided for in this act.

The Board of General Appraisers overruled the protests.

The only question litigated before the board and raised by the record here is whether or not these cherries, which were in casks or barrels, were or were not "in brine" as that expression is used in paragraph 559.

---

The Board of General Appraisers found that the cherries had been washed and put into barrels with salt and water after having been subjected to sulphur fumes. Quoting from an earlier opinion the board said, referring to paragraph 559:

The purpose of this provision of the statute, it seems to us, could only have been to enable importers to bring in certain fruits preserved by means of a saline solution, and any quantity of salt in water that would attain that end would very properly be termed "brine" within the intent of the law.

The board further said:

The testimony in the case before us here does not satisfy us that there was sufficient salt in the solution in which the cherries were immersed to act as a preservative.

We think the interpretation the board gave to the words "in brine" is correct, and proceed to consider whether the record discloses such a state of facts here that, applying the rule which we have in numerous cases adopted, that the judgment of the Board of General Appraisers upon a question of fact will not be set aside unless it appears to be either wholly unsupported by or clearly contrary to the weight of evidence as shown by the record, such judgment shall be reversed in this case.

We find it unnecessary to enter into any exhaustive review of the evidence.

There was testimony on the part of the importers which tended to show that at least 4 per cent of salt was put into the water in which these cherries were immersed at the time they were prepared for shipment, and we gather from the whole record that if that amount of salt had been so used it is probable the resulting solution would have been a brine of sufficient preservative qualities to have warranted the board in sustaining the importers' protests. The record also tends to show that sufficient preservative qualities may be possessed by a saline solution containing a little less than 4 per cent of salt.

But the Government upon its part introduced evidence which tended to show that the saline solution in which the cherries were found to be immersed when they reached this country was very much less than 4 per cent and varied from less than one-half of 1 per cent to a little over 2 per cent of salt, as shown by the analyses of the Government chemist, who tested samples of the liquid from various casks.

One of the importers, who was a practical chemist, also testified that he analyzed various samples of the solution taken from the casks and, if we understand correctly his evidence, his analyses showed that in every case the amount of salt was less than that which was supposed to have been put into the casks when the cherries were prepared for shipment. The importers contend that this discrepancy

might result from the fact that in some of the casks the saline solution leaked out during transportation, but it is not suggested nor is it apparent to us how the leaking process would diminish the percentage of salt in that part of the solution remaining in the casks. It is also urged by importers that if some of these cherries were not in fact preserved by the brine it involves the taxation of unsound and free entry of sound goods. If this be so, it does not warrant an unjustifiable classification, and the law provides a remedy for fruits damaged in importation transit.

Without undertaking to say what percentage of salt must be found in the solution to constitute it a brine within the meaning of the paragraph, it is sufficient for the purposes of this case to say that, the whole evidence considered, we do not think the judgment of the Board of General Appraisers should be reversed as either contrary to or unsupported by the weight of evidence, and it is therefore *affirmed*.