(C. D. 644)

MOSCAHLADES BROS., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided June 8, 1942)

*Siegel & Mandell (Sidney Mandell* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General *(Alfred A. Taylor, Jr.,* and *Joseph F. Donohue,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This action involves the classification of cooked beans in hermetically sealed tins which were assessed for duty under paragraph 765, act of 1930, as "Beans * * * prepared or preserved in any manner, 3 cents per pound on the entire contents of the container." The importer claims that the merchandise is properly assessable at the same rate under the same paragraph as "Beans * * * in brine" with allowance in duties for the weight of the brine.

At the trial the vice president of the importing concern testified that from his experience brine consists of a mixture of salt and water;

that the material contained in the cans other than beans was brine, which he determined from the taste alone; that he separated the brine from the beans into two separate containers and weighed them; that the net contents of 1 pound 12 ounces, as stated upon the can, included the weight of the beans and the brine; that the beans alone weighed from 1 pound 1 ounce to 1 pound 2 ounces, none of the cans tested weighing more than 1 pound 2 ounces; and that when the beans are used the brine is discarded.

The Government chemist testified for the defendant that a sample of the merchandise was analyzed for the purpose of determining the composition of the liquid and that it was found to contain 1.3 per centum of salt out of 4.7 per centum of total solids; that the solution in the cans was impregnated with salt but in the opinion of the witness a saturated solution as applied to salt and water is one that contains about 35 per centum of salt; that a strongly impregnated solution of salt and water is one containing somewhat less of salt than a saturated solution; and that the solution examined was neither a strongly impregnated nor a saturated solution of salt and water.

The plaintiff contends that paragraph 765 directs the imposition of a duty of 3 cents per pound upon beans which are prepared or preserved upon the basis of the entire contents of the container, and that such rate when applied to beans in brine is limited to the weight of the beans, due allowance being made for the weight of the brine; that the salty flavor of the water in which the beans are packed indicates that it is brine and therefore the collector in taking duty upon the weight of the entire contents of the cans took more duty than prescribed in the statute.

The Government contends that the liquid portion of the contents of the cans is not brine and the collector legally assessed duty upon the entire contents; that the word "brine" implies a solution composed of water saturated or strongly impregnated with salt; that the test applied by the importer of testing the liquid is insufficient to establish that it was brine; and that the Government has established without contradiction that a solution of 1.3 per centum sodium chloride does not constitute a saturated solution nor one strongly impregnated with salt.

The only question presented in this case is whether or not beans packed in hermetically sealed tins in a solution of salt and water may be considered dutiable as beans in brine. If so classifiable duty is assessable upon the weight of the beans exclusive of the brine.

There are many decisions of the courts dealing with the question of whether or not a commodity is packed in brine. The following is a review of the principal decisions upon the subject.

In the case of *Causse Manufacturing Co.* v. *United States*, T. D. 36029 cherries imported in a solution of .12 to .4 of 1 per centum of

salt were held not free of duty as fruits in brine, the court stating that it had no alternative than to adopt the commonly accepted definition of the word where the evidence falls short of proving that a broader and different meaning obtains generally in the understanding of the trade. This decision was affirmed by the Circuit Court, 143 Fed. 690, and also upon appeal by the Circuit Court of Appeals, 151 Fed. 4, wherein the court stated that "cherries immersed in a solution containing not more than .402 per cent of salt are not fruits in 'brine.' "

In the case of *Brown* v. *United States,* Abstract 29976 (T. D. 32847), cherries in brine were claimed free as fruits in brine. The brine upon importation was found to contain .595 of 1 per centum of salt. Two witnesses testified that the term "in brine" when applied to cherries in brine was entirely within the trade understanding. The court stated:

\* \* \* The purpose of this provision of the statute, it seems to us, could only have been to enable importers to bring in certain fruits preserved by means of a saline solution, and any quantity of salt in water that would attain that end would very properly be termed "brine" within the intent of the law. The testimony in this case satisfies us that "cherries in brine" are cherries immersed in a saline solution of sufficient strength to preserve them for importation and future manufacture into other commodities in response to the exigencies of trade or business. The salt contained in the brine in this case, it would seem, served the only purpose, and the full purpose, that any quantity of salt would have served, and is much more desirable for the uses to which the cherries are put than a stronger solution would be. \* \* \* Hence we conclude that, in this case the commodity is fruit in brine and free of duty under paragraph 571, sustaining the protest.

The reasoning as to preservation in the decision in the foregoing case was followed by this court in Abstract 30741 (T. D. 33018), which was sustained upon appeal in *Mihalovitch, Fletcher & Co.* v. *United States,* 4 Ct. Cust. Appls. 98, T. D. 33372. In that case it was held that the cherries were not "in brine" within the meaning of the statute, having been subjected to sulphur fumes as well as being packed in salt and water. The lower court was not satisfied that there was sufficient salt in the solution in which the cherries were immersed to act as a preservative independent of the sulphur fumes. The appellate court held that when in packing fruit a saline solution is used simply as a preservative such fruit is "in brine" in the language of the paragraph, but, without undertaking to fix what percentage of salt in a solution will make that solution "brine," was of the opinion that the evidence did not warrant the conclusion that the fruit there in question was "in brine."

The case of *American Express Co.* v. *United States,* Abstract 32400 (T. D. 33433), involved cherries found to be packed in a salt solution of .16 to .2 of 1 per centum of salt. The court stated that such a

percentage of salt was less than had been present in previous importations which were held to be fruits in brine and, in order to pass upon a commodity with a solution of such strength of salt, it would have to appear positively that it did act as a preservative. The testimony there indicated that the cherries had been subjected to sulphur fumes which acted as a preservative; that very little salt would be necessary to accomplish preservation; that salt was of use for its preservative effect when the process of sulphur fuming was carelessly performed, and that with the addition of sulphur dioxide .02 of 1 per centum of salt solution would be ample to act as a preservative. Upon such testimony the court held that the salt solution was not brine.

In the case of *R. U. Delapenha & Co.* v. *United States*, Abstract 36645 (T. D. 34810), the product was also cherries imported in a solution containing .07 of 1 per centum of salt. There, likewise, the cherries had been subjected to a sulphur treatment, and it was admitted that the sulphur had a preservative effect upon the cherries. In holding that such cherries were not "in brine" this court stated:

* * * We are not disposed, then, to ascribe to the very small amount of salt in this case the qualities of a preservative simply because the cherries contained in the water are preserved, they having been subjected to sulphur fumes. In view of the ruling heretofore made, this question can only be determined from positive, intelligent, and accurate testimony. If we are to accept loose expressions with reference to this question of preservation of fruit by means of salt or in a solution of salt, it is difficult to determine where we shall be able to stop. * * *

In the case at bar, we think the importers have failed to show that this commodity is cherries in brine under the rule heretofore laid down for the interpretation of the statute.

Upon appeal to the Court of Customs Appeals, now the Court of Customs and Patent Appeals, as reported in *Delapenha* v. *United States*, 6 Ct. Cust. Appls. 18, T. D. 35252, the court stated that the sole issue was whether the imported cherries are fruits in brine, which resolves itself into the question whether the liquid which covered the cherries was a brine in the sense in which that word is used by the statute. The court then noted that the standard dictionaries uniformly defined "brine" to be "water saturated or strongly impregnated with salt," and also that the term could hardly be applied to water which contained only .07 of 1 per centum of salt, as such a percentage would certainly not saturate or strongly impregnate the water in which it was dissolved. The court also noted that evidence was submitted for the purpose of establishing that the merchandise was known commercially as cherries in brine and that the liquid was known commercially as brine in this connection, and that such a salt solution was sufficiently saline to preserve the cherries during shipment and even longer. The witness was unable to state that he

could detect any salt in the liquid by simply tasting it. The appellate court in sustaining the decision of this court stated:

it is within common knowledge that water containing only seven one-hundredths of 1 percent of salt, so small a proportion indeed that its presence can not be detected by the sense of taste, can not properly be called brine. That term was written by Congress in the free-list provision in question, and it can not be wholly eliminated therefrom by administrative or judicial construction. * * * Nor does the present record establish a peculiar commercial meaning of the term "brine." * * * In the present case, however, it is probable that the cherries in question were actually preserved by the sulphur treatment, and that the infusion of salt in the water is negligible.

In the case of *Gomez & Dietlin Co.* v. *United States*, T. D. 38090, certain cherries were assessed for duty as prepared fruits and claimed free as fruits in brine. An analysis of the salt content disclosed .595 of 1 per centum in one lot and .588 of 1 per centum in another lot. The cherries had also been bleached by the use of sulphur fumes, but the evidence established that the sulphur was used exclusively for bleaching purposes and whatever preservative qualities it may have exerted upon the cherries were purely incidental and that the preservation would have been complete without it. There was also undisputed testimony adduced as to the commercial designation of the merchandise in the trade and commerce of the United States which the court found fully established that the cherries there in question were commercially known and dealt in as cherries in brine. In reviewing the law the court stated that:

* * * Each case seems to have been decided upon the facts immediately surrounding it, depending upon the amount of salt in the solution called brine, whether it was sufficient to preserve the fruit without the aid of any other preservative, or whether there was in fact used as a part of the preserving element some other material, such as sulphur.

The court found that the liquid, judging from the taste, was strongly impregnated with salt, and in holding that the commodity was free of duty as fruit in brine, stated as follows:

* * * It must be borne in mind that the importation here is not brine; it is fruit in brine, or cherries in brine. If we were passing upon the question of whether or not the liquid in this case, imported alone, was brine, brine being named in the tariff law, we would approach the question from a different angle from that of determining whether the commodity as imported here is fruits in brine. The record discloses that it is imported as cherries in brine. The testimony shows that it is handled and dealt in as cherries in brine. The object of the immersion in this liquid is to preserve it for future commercial purposes.

In *Marks Co.* v. *United States*, T. D. 38504, the cherries imported in barrels were in a saline solution of .06 of 1 per centum to 2.60 per centum of salt. The *Gomez* case, *supra*, was admitted in evidence and additional evidence adduced to the effect that the minimum amount of salt found in the barrels was sufficient to act as a preserva-

tive. The court, upon a consideration of the record as a whole, held the cherries to be free of duty as fruit in brine, stating as follows:

* * * It has been intimated by the board in a previous decision that whatever amount of salt was present in the brine, if as matter of fact the salt was the preservative, it fulfilled the requirement of the trade, as these importations and similar ones are made with but one purpose, and whatever salt is used is for the purpose of preserving the fruit until it arrives in this country, and can be utilized in manufacturing the confections—usually glacé cherries—which is the main object of the importation.

The tendency on the part of the board has been to hold that the solution does not constitute a brine unless it contains sufficient salt to preserve the cherries exclusive of any other preserving element which might be found therein.

In the case of *Moscahlades Bros.* v. *United States*, 13 Ct. Cust. Appls. 633, T. D. 41482, certain olives were imported in 50-gallon barrels. The barrels contained from a quarter gallon to 2 gallons of fluid strongly impregnated with salt. The olives were assessed with duty under paragraph 744, act of 1922, reading: "Olives in brine, green, 20 cents per gallon; ripe, 20 cents per gallon; * * *." The plaintiff claimed the product dutiable under paragraph 749 as fruits, otherwise prepared or preserved. The court found that the 20 cents provision of paragraph 744 provided for green olives in brine, ripe olives in brine, pitted or stuffed olives, and dried ripe olives, and in holding that the olives in question were not in brine, stated as follows:

What is or is not brine has been often considered by the courts in customs cases. Perhaps the most comprehensive discussion of these authorities is found in the opinion of this court filed in *Delapenha & Co.* v. *United States*, 6 Ct. Cust. Appls. 18. There the definition given by standard lexicographers for the word "brine" is adopted, namely: "Water saturated or strongly impregnated with salt. "This court has never had occasion to depart from the definition given in the case cited. It must follow, therefore, that the small amount of liquid found in the barrels of olives involved here on importation can not be considered as brine, it being obviously composed of the juices of the olives in combination with salt. * * * Fifty gallon of olives in a barrel, together with from a quarter gallon to two gallons of fluid can not be said to be "in brine." As we construe the statutory language, olives, to be in brine, must be immersed in it.

The case of *Lekas & Drivas*, Abstract 17106, involved the classification of beans imported in tins. The beans were in the pod and were prepared by cutting at both ends and cooking to a certain extent. They were then put in the can and a little water and salt added before sealing and sterilizing them. The merchandise was classified under the latter portion of paragraph 763, act of 1922, reading: "Par. 763. Beans, not specially provided for, green or unripe, one-half of 1 cent per pound * * *; in brine, prepared or preserved in any manner, 2 cents per pound." The plaintiff claims the beans dutiable at 1 cent per pound as green or unripe; and that the weight of the juice in the tins is not a part of the dutiable weight.

It was contended that the latter portion of said paragraph provided for beans in brine and for a further subclassification as prepared or preserved beans in brine, the words "prepared or preserved" referring to the antecedent, "in brine." The plaintiff admitted that the beans there in question were not in brine within the meaning of the *Delapenha* case, *supra*, or the *Moscahlades Brothers* case, *supra*.

This court held that the weight of the juice in the cans should not be included in the net weight of the contents in determining the dutiable weight and that the beans were classifiable as prepared or preserved.

Upon appeal the appellate court in *Lekas & Drivas* v. *United States*, 19 C. C. P. A. 389, T. D. 45523, sustained the decision of this court, stating that "the words 'prepared or preserved' were intended to include a class of beans not theretofore specifically mentioned, and such beans as those before us."

A careful examination of the evidence in the case at bar discloses that the liquid contained in the cans is salty to the taste. The testimony of the Government chemist is inconclusive as to the percentage of salt contained in the liquid. We are not enlightened concerning whether or not the presence of the salt in the liquid contents of the can acted as the sole preservative of the beans. Presumably the sterilization thereof in hermetically sealed cans would have preserved the beans without the addition of salt to the water. Neither is there anything in the evidence tending to establish that the beans in question are bought and sold in the wholesale trade and commerce of the United States as beans in brine. In view of the judicial interpretation of the words "in brine" as announced in the foregoing decisions, we are of the opinion that the beans in question are of the same dutiable character as the beans the subject of decision in the *Lekas & Drivas* case, *supra*, wherein they were held to be "prepared or preserved." Inasmuch as the Tariff Act of 1930 provides that prepared or preserved beans are dutiable upon the basis of the contents of the can, we hold that duty was properly assessed by the collector.

Judgment will therefore be entered in favor of the defendant.