**BORDER BROKERAGE COMPANY, Inc.**

v.

**UNITED STATES.**

**C.D. 3437; Protest No. 65/3481–24853.**

United States Customs Court
Third Division.
April 30, 1968.

Glad & Tuttle, San Francisco, Cal. (George R. Tuttle, San Francisco, Cal., and Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Bernard J. Babb and Owen J. Rader, New York City, trial attorneys), for defendant.

Before RICHARDSON and LANDIS, Judges, and DONLON, Senior Judge.

DONLON, Judge:

This case has to do with merchandise that is described as "Fiddlehead Greens", a vegetable imported from Canada. The greens at bar were entered at Blaine, Washington, and were classified as "Vegetables, fresh, chilled, or frozen (but not reduced in size nor otherwise prepared or preserved): * * * Other", dutiable under item 137.70 of the Tariff Schedules of the United States at the rate of 25 per centum ad valorem.

Plaintiff's claims are that these frozen greens had, prior to importation, been cut, sliced, or otherwise reduced in size, making them dutiable under item 138.00 of TSUS; or, alternatively, that the greens, having been blanched as a part of the freezing process, were "prepared"

within the purview of item 141.80, even though admittedly frozen. If plaintiff is successful in establishing either of these claims, the duty rate would be 17.5 per centum ad valorem.

The pertinent provisions of the competing tariff schedules are:

Schedule 1, part 8, subpart A:

Vegetables, fresh, chilled, or frozen (but not reduced in size nor otherwise prepared or preserved):

\*   \*   \*   \*   \*   \*

Item 137.70   Other . . . . . 25% ad val.
Item 138.00   Vegetables, fresh, chilled, or frozen, and cut, sliced, or otherwise reduced in size (but not otherwise prepared or preserved) . . . . . . . . . . . 17.5% ad val.
Schedule 1, part 8, subpart C:

Vegetables (whether or not reduced in size), packed in salt, in brine, pickled, or otherwise prepared or preserved (except vegetables in subpart B of this part):

\*   \*   \*   \*   \*   \*

Other:

\*   \*   \*   \*   \*   \*

Item 141.80   Other . . . . 17.5% ad val.
(There is no claim that the vegetables at bar are such vegetables as are described in subpart B; hence, there is no issue as to the above exception.)

The parties stipulated in open court that the greens at bar were, when imported, frozen, and that they had been blanched prior to freezing, as frozen vegetables are. Blanching consists of subjecting vegetables either to hot water or steam, a process which deactivates the enzymes before freezing. Unless deactivated, the enzymes in fresh vegetables might, and probably would, result in loss of flavor and color during the period of frozen storage. (R.2, 3.) The vegetables at bar were blanched by immersion in hot water. (R. 7.)

A sample, while not taken from the shipment at bar, has been accepted as being representative of the merchandise at bar. (Plaintiff's exhibit 1.)

Except for freezing (including prior blanching) and packaging, the only described process to which these Fiddlehead Greens were subjected was their cutting, at harvest, in order to sever the growing greens from their roots.

The issues are, first, whether blanching as a step of the freezing process, in itself constitutes preparing or preserving otherwise than by freezing; second, whether the harvesting of the growing greens by cutting is such reduction in size as item 138 describes; and, third, whether, even if the greens at bar have not been reduced in size, they are within the tariff classification of schedule 1, part 8, subpart C, as plaintiff contends.

■ As to the first issue, we find that the described blanching, by hot water immersion, is a step (and it seems to be an essential step) in the commercial process of freezing fresh vegetables. When all that is done to the fresh vegetables is what is required in order to freeze them, we hold that they are frozen vegetables, within the classification described in schedule 1, part 8, subpart A. They are not prepared or preserved otherwise than by commercial freezing. Tariff laws speak in terms of commerce.

■ The freezing process is at best a temporary preservation. The care with which frozen foods are stored, a matter of common knowledge, is eloquent testimony that freezing alone does not preserve. Nor is there any proof that blanching does so.

"Prepared, or preserved," as used in the tariff acts ordinarily involves cooking, salting, drying, smoking, curing, or the application of some method or process whereby the fresh or natural condition of the article is so changed as to be more or less a permanent preservation. \* \* \* [United States v. Conkey & Co., 12 Ct.Cust.Appls. 552, T.D. 40783, at p. 555.]

■ Moreover, plaintiff's contention would, as defendant points out, render

meaningless the tariff enumeration for frozen vegetables in schedule 1, part 8, subpart A. We cannot conclude that the language there used is without tariff significance. Tariff negotiators and the Congress are assumed to be cognizant of what is common knowledge as to established commercial practices. Frozen vegetables are first to be blanched, then frozen. Therefore, they are not prepared other than by the process required for freezing.

■ As to the second issue, plaintiff's argument that the act of harvesting vegetables is itself such a cutting, or reduction in size, as the tariff schedules contemplate, seems to us also to be specious. Vegetables are articles of commerce that are bought, sold and imported, as vegetables. They are not the growing vegetables of horticulture, useless in commerce *qua* vegetables until the plants have been harvested.

The cutting, or reduction in size, of vegetables, which the tariff schedules describe, is the cutting or reduction in size of the commercial vegetable. Here we have no proof of any such processing. Indeed, the proofs are to the contrary, that the only cutting of these greens was the severance incident to harvesting.

That this is the rule is too well established to call for extensive citation of authorities. It suffices to refer to the opinion of our appeals court in United States v. The Hothouse Products Corp., Quinn & Werner, 21 CCPA 261, T.D. 46789, where Judge Lenroot said:

* * * It is our opinion that when Congress used the words "reduced in size," it contemplated, with reference to vegetables of this character, a reduction in size beyond the point that such vegetables are ordinarily reduced in size as an incident of placing them in a marketable condition. In other words, if endives, as grown in this country and abroad, are not usually sold or dealt in without removing a part of the leaves, then with such leaves removed they are in their natural state and not reduced in size in a tariff sense.

[Pp. 263, 264.]

■ The third issue is whether these frozen vegetables are prepared or preserved in a manner described in subpart C so as to be classifiable thereunder, notwithstanding the specific enumeration in subpart A. There is no proof whatsoever that the frozen greens at bar have been packed in salt or in brine, or pickled. Here the only preparation or preservative process described for the vegetables at bar is freezing (including blanching). We have found that blanching is a step in the commercial freezing process. Nor is blanching or freezing, *ejusdem generis* as the tariff processes of packing in salt or in brine, or pickling.

■ It is a rule of statutory construction that general terms, such as "otherwise prepared or preserved", following a specific enumeration, such as here, "packed in salt, in brine, pickled", are to be construed as *ejusdem generis* as the specific terms. As our appeals court has said:

The rule of *ejusdem generis* (where particular words of description are followed by general terms, the latter refer only to things of a like class with those particularly described) is a well known rule of construction, often used by this court, to aid in arriving at the legislative intent of Congress, which, of course, is the ultimate consideration in the construction of tariff statutes. The rule is primarily designed to preserve the meaning of the particular words as well as to give to the general words an interpretation consistent with the manifest purpose of the entire act. Overton & Co. v. United States, 2 Ct.Cust.Appls. 422, T.D. 32172. The latter purpose subserves an even more fundamental purpose of giving effect, if possible, to *all* words in a statutory provision, since the legislature is not presumed to have used superfluous words. [Citing authorities.] [United States v. C. J. Tower & Sons, 44 CCPA 1, C.A.D. 626, at p. 5.]

The protest is overruled. Judgment will be entered accordingly.