(C.D. 4034)

NORTH PACIFIC CANNERS AND PACKERS *v.* UNITED STATES

United States Customs Court, Third Division

552

(Decided June 12, 1970)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, and *Hudson F. Edwards* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Dominick M. Minerva* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges: LANDIS, J., dissenting

ROSENSTEIN, Judge: The merchandise involved herein was identified at the trial (the entry papers were not offered in evidence) as quick frozen silverskin onions imported from Holland and assessed with duty at 17.5 per centum ad valorem under TSUS item 138.00 which provides for "Vegetables, fresh, chilled, or frozen, and cut, sliced, or otherwise reduced in size (but not otherwise prepared or preserved)". Plaintiff claims that the merchandise is properly dutiable at 1.75 cents per pound under TSUS item 136.91 which, in conjunction with its superior heading, provides for "Vegetables, fresh, chilled, or frozen (but not reduced in size nor otherwise prepared or preserved): Onions: * * * Other".

The deposition, taken pursuant to commission of the president of the company in Holland which grew, harvested and processed the onions at bar, states that, after harvesting, the onions were cleaned, machine-trimmed of the inedible roots and stems, separated according to size, graded according to quality, blanched by heating to 167 degrees Fahrenheit for five minutes to remove enzymes and protect the color, cooled, frozen, and packed.

The outer thin layer, or covering, of the onions "mostly" disappeared during the processing at the plant. The company also packs silverskin onions with some of the skin intact in jars of vinegar. The imported onions, as harvested, had a size of 10–16 millimeters. They "still have the same size after processing as when they came from the field except the immeasureable outer film", and are the same size when packed ready for shipment to the United States except for an immeasureable increase in size caused by freezing. After importation, the onions were mixed with peas, to which seasoning was added, and packed in cartons.

Defendant agrees that the imported onions are frozen but not otherwise prepared or preserved (blanching prior to freezing has been held not to be a process of preparation or preservation, *Border Brokerage Company, Inc.* v. *United States*, 60 Cust. Ct. 487, C.D. 3437, 284 F. Supp. 806 (1968)).

The sole issue herein is whether the onions at bar, which were imported with the roots, stems and outer covering removed, are cut, sliced, or otherwise reduced in size within the intendment of item 138.00.

In *United States* v. *The Hothouse Products Corp., Quinn & Werner*, 21 CCPA 261, T.D. 46789 (1933), our appellate court held that endives, which had almost 20 percent of the outer leaves removed before being placed upon the market, were properly classifiable under paragraph 774, Tariff Act of 1930, as "Vegetables in their natural state * * * not specially provided for," rather than under paragraph 775 as "Vegetables * * * if cut, sliced, or otherwise reduced in size * * * not specially provided for * * *." The court stated:

> The question before us for determination is the meaning to be ascribed to the words "reduced in size" as used in said paragraph 775. We are of the opinion that Congress did not intend by this language that all vegetables reduced in size from the condition in which they are taken from the ground should be classified under said paragraph 775. To so hold would exclude many vegetables, like cabbage and celery, from classification as "vegetables in their natural state" under paragraph 774, if decayed leaves of the cabbage were removed or the root of the celery stalk were severed.

> The case of *United States* v. *Strohmeyer & Arpe Co.*, 167 Fed. 533, decided by the Circuit Court of Appeals, Second Circuit, involved the construction of the words "Vegetables in their natural state" as used in paragraph 257 of the Tariff Act of 1897. The merchandise there involved was cauliflowers trimmed, washed and packed in a weak brine.

The court in its opinion said:

> The Board and the Circuit Court concur in the opinion that the importers' contention is well founded, and we see no reason for reaching a different conclusion. The question, briefly stated, is whether the imported cauliflower, concededly a vegetable, when it arrived at the port of entry was in its natural state or prepared or preserved.

> The tariff act, like all statutes, must be given a commonsense construction. If paragraph 257 be construed literally it would result in the prohibition of the importation of all vegetables, for the moment a vegetable is cut from its growing stem or taken from the ground it ceases, in this restricted sense, to be in its natural state. If an exceedingly strict construction were adopted, it would exclude vegetables which have been washed or trimmed or from which decayed or superfluous leaves or stems have been removed; for these too, strictly speaking, are not in their natural state. Of course such a construction is absurd and no one contends to the contrary. The statute must be so interpreted as to give force to the evident intent of Congress to permit vegetables as they are known and dealt with in this country, as they come from the farm and garden, to enter by paying a duty of 25 percent.

In harmony with the foregoing, we are of the opinion that it was the intent of Congress that vegetables should be regarded as being in their natural state, and not reduced in size, if the ordinary and usual process employed by the grower is to remove even a substantial percentage of the outer leaves before placing them on the market. It is our opinion that when Congress used the words "reduced in size," it contemplated, with reference to vegetables of this character, a *reduction in size beyond the point that such vegetables are ordinarily reduced in size as an incident of placing them in a marketable condition.* In other words, if endives, as grown in this country and abroad, are not usually sold or dealt in without removing a part of the leaves, then with such leaves removed they are in their natural state and not reduced in size in a tariff sense.

The testimony abundantly establishes the fact that a portion of the leaves of endives is always removed by the grower before placing them on the market, both in this country and in Belgium, and that, except at the beginning of the season, the leaves removed are thrown away in the field.

*Had there been any testimony that endives were also marketed by farmers without the removal of a portion of the leaves, we might come to a different conclusion,* but upon the record before us we are constrained to hold that the lower court was in error in holding that the endives here involved had been "reduced in size" within the meaning of those words as used in said paragraph 775, and hold that the merchandise was correctly classified by the collector. [Emphasis supplied.]

The same meaning for "reduced in size" has been carried over into TSUS. In *Border Brokerage Company, Inc.* v. *United States, supra,* plaintiff claimed that frozen fiddlehead greens which had been cut, at harvest, from their roots were improperly classified under TSUS item 137.70 providing for "Vegetables * * * frozen (but not reduced in size nor otherwise prepared or preserved)", as they were cut, or reduced in size, within the meaning of item 138.00. The court rejected this contention, stating:

* * * plaintiff's argument that the act of harvesting vegetables is itself such a cutting, or reduction in size, as the tariff schedules contemplate, seems to us also to be specious. Vegetables are articles of commerce that are bought, sold and imported, as vegetables. They are not the growing vegetables of horticulture, useless in commerce *qua* vegetables until the plants have been harvested.

The cutting, or reduction in size, of vegetables, which the tariff schedules describe, is the cutting or reduction in size of the commercial vegetable. Here we have no proof of any such processing. Indeed, the proofs are to the contrary, that the only cutting of these greens was the severance incident to harvesting.

That this is the rule is too well established to call for extensive citation of authorities. It suffices to refer to the opinion of our

appeals court in *United States* v. *The Hothouse Products Corp., Quinn & Werner*, 21 CCPA 261, T.D. 46789, * * *

Plaintiff correctly notes that "the pertinent cases have established that the phrase 'reduced in size' means 'reduction in size beyond the point that such vegetables are ordinarily reduced in size as an incident of placing them in marketable condition.' "

Plaintiff has the duel burden of proving not only that the district director's presumptively correct classification is erroneous but that its claimed classification is correct. *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966). On the record herein, which bears, in essence, on the processing of the subject merchandise in Holland, and not at all on the marketing practices in this country with regard to such vegetables, we find that plaintiff has failed to discharge its burden of proving that the onions at bar are not cut, sliced, or "reduced in size" as that term is defined in the *Hothouse Products* and *Border Brokerage* cases, *supra*, and that they come within the claimed classification.

The protests are overruled. Judgment will be entered accordingly.

### DISSENTING OPINION

LANDIS, Judge: The issue in this case is whether frozen onions, in the condition imported, were reduced in size. That is a question of fact.

Going no further than the facts as to the processing of the frozen onions discussed in the majority opinion with the case law, I am satisfied that plaintiff has made a *prima facie* showing that the frozen onions were not reduced in size. I would, accordingly, sustain the protests.

There was, as the majority states, an immeasurable increase in the size of the onions caused by freezing. With reference to vegetables of the character of these imported frozen onions, it seems to me implicit that the "immeasurable outer film" which "mostly" disappears during the freezing process was no more than the ordinary consequence of placing them in a marketable frozen condition. *United States* v. *The Hothouse Products Corp., Quinn & Werner*, 21 CCPA 261, T.D. 46789 (1933). There is no evidence to the contrary.

While the official entry papers were not put in evidence, I believe it fair comment to state that the customs laboratory report attached to customs entry 4512 in this case, a report which the district director asked for in submitting samples for information as to whether the onions were reduced in size or otherwise prepared or preserved, confirms the probatively established fact that the "onions do not appear to be reduced in size." Cf. *M. Pressner & Co.* v. *United States*, 26 CCPA 186, C.A.D. 16 (1938).