**GREEN GIANT CO.**

v.

**UNITED STATES.**

C.D. 4401; Court No. 71–4–00011.

United States Customs Court.

Jan. 17, 1973.

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Steven P. Florsheim, New York City, trial attorney), for defendant.

FORD, Judge:

By this action, the court has before it for determination the proper classification of certain whole frozen mushrooms which had been blanched prior to freezing. Said merchandise was classified as fresh mushrooms under the provisions of item 144.10, Tariff Schedules of the United States, and assessed with duty at the rate of 5 cents per pound plus 25 per centum ad valorem.

The Tariff Schedules of the United States provisions covering mushrooms provide for fresh, dried or otherwise prepared or preserved. By the pleadings in this action, the parties have agreed that said mushrooms are not dried. Accordingly, plaintiff contends the proper classification of frozen mushrooms is provided for under Item 144.20, Tariff Schedules of the United States, as otherwise prepared or preserved.

The pertinent portions of the statutory provisions involved provide as follows:

Mushrooms, fresh, or dried, or otherwise prepared or preserved:

| | | |
|---|---|---|
| 144.10 | Fresh | 5¢ per lb. + 25% ad val. |
| 144.12 | Dried | * * * |
| 144.20 | Otherwise prepared or preserved | 3.2¢ per lb. on drained weight + 10% ad val. |

The record in this case consists of the testimony of six witnesses called on behalf of plaintiff and seven exhibits. Defendant introduced the testimony of one witness.

The processing of the mushrooms both abroad and in the United States is clearly set forth and is not disputed. The freshly picked mushrooms are brought to the receiving platform of the freezing plant where they are weighed and inspected for quality. They are then placed in a wash tank. The mushrooms are then flumed to an underwater grader which separates them according to size after which the stems are trimmed. They are then conveyed to a chilled water tank which holds the mushrooms for the blanching process.

The blanching process is to retard spoilage by killing bacteria and deactivating enzymes as well as to maintain the product as close to its raw state as

possible. The blanching is accomplished in a water blancher which is approximately 20 inches in width and 25 feet in length with a depth of 2 feet. The mushrooms are conveyed through the blancher in aluminum perforated containers. The water in the blancher is heated with live steam and kept at a rolling boil. The tempreature is kept at 210° Fahrenheit and the process takes 80 to 95 seconds at which time the containers are removed. There is a shrinkage of 10 to 13 percent of the total weight as a result of the blanching.

· The product is then discharged into a flume of refrigerated water kept at 40° Fahrenheit and then spills onto a stainless steel net for a cursory inspection. After inspection, it is again spilled into a refrigerated flume which transports it to the entrance of the freezing tunnel. Prior to entering the tunnel, it is placed on a dewatering belt which permits the removal of all water not naturally contained in the product. The belt conveying the merchandise through the freezing tunnel is 3 feet wide and 48 feet long, and the temperature in the tunnel is maintained at a low of minus 45° and a high of minus 34°. The product is conveyed through the tunnel in approximately 8 minutes. The mushrooms are then individually frozen. They are then placed in polyethylene lined shipping containers, weighed, sealed and sent to a storage area which is maintained at minus 10° Fahrenheit. Samples are taken for inspection in the storage area. The mushrooms are not packed in any chemical substance nor is salt or sugar added.

The frozen mushrooms are then transported in an insulated truck for transportation to the cold-storage area of the vessel. Upon receipt in the plant in the United States, the mushrooms are dumped from the shipping container into an automatic filler which fills individual pouches. Sauce is then added to the pouches by hand and they are then sealed, placed into a carton and returned to the freezer. This processing of the frozen mushrooms takes only a few minutes.

The freezing process is used to prolong the shelf life of the product which is then 1 to 3 years. The shelf life of fresh mushrooms kept at 35° Fahrenheit is 5 to 7 days while at room temperature it is approximately 24 hours.

Frozen mushrooms must be prepared according to the directions on the carton while fresh mushrooms may be used raw. The frozen mushrooms are prepared by the consumer while still frozen. If allowed to thaw, they would "weep," causing loss of liquid, and turn darker. Blanching is a process similar to pasteurization of milk. Pasteurized milk is considered fresh milk while unpasteurized milk is considered raw milk.

Fresh mushrooms are not washed as the shelf life is reduced when washed. The texture of a fresh mushroom is firm while a blanched frozen mushroom has a rubbery texture. Canned mushrooms are blanched, packed in water, salt and ascorbic acid and are thoroughly cooked. Four of the witnesses called on behalf of plaintiff believed a blanched frozen mushroom does not fall within the meaning of a fresh mushroom because it has been altered from its natural state.

Schedule 1, part 8 of the Tariff Schedules of the United States, is the tariff schedule for vegetables. Subpart A provides classification for fresh, chilled or frozen vegetables with no differentiation in rate between the three designated conditions; nor is there a distinction in classification of the vegetables provided for in subpart B and designated as "Vegetables, Dried, Desicated, or Dehydrated." Subpart C covers vegetables packed in salt, in brine, pickled or otherwise prepared or preserved, while subpart D provides for mushrooms and truffles, fresh, dried or otherwise prepared or preserved. There is, for the most part, a distinction in classification under subparts C and D depending upon the designated condition of the vegetables involved.

Insofar as vegetables are concerned, at least for tariff purposes, there would

appear to be no distinction between fresh, chilled or frozen. This may very well be due to the numerous decisions involving frozen and blanched products which Congress was presumed to be aware at the time of the enactment of the Tariff Schedules of the United -States. The re-enactment of the identical language providing for mushrooms in the Tariff Acts of 1922, 1930, and the Tariff Schedules of the United States is an indication of the lack of distinction between fresh and frozen mushrooms.

The question of blanching was considered by this court as an essential step in the process of freezing and thus not a process which would render the vegetables prepared or preserved. Border Brokerage Company, Inc. v. United States, 60 Cust.Ct. 487, C.D. 3437, 284 F.Supp. 806 (1968), involving blanched frozen vegetable greens and North Pacific Canners and Packers v. United States, 64 Cust.Ct. 551, C.D. 4034 (1970), involving blanched frozen onions. These cases in addition to determining that blanching did not place the vegetables in the category of prepared or preserved also held the freezing likewise did not place them in said category.

The most frequently cited cases on the question of whether freezing constitutes preserving are John A. Conkey & Co. v. United States, 16 Ct.Cust.Appls. 120, T. D. 42766 (1928); United States v. Conkey & Co., 12 Ct.Cust.Appls. 552, T.D. 40783 (1925), and Moscahlades Bros. v. United States, 6 Ct.Cust.Appls. 399, T.D. 35973 (1915).

In the *Moscahlades* case, certain fish roe which was classified as preserved under paragraph 216, Tariff Act of 1913, was held not to be preserved when it is salted enough to preserve it in the winter but not during the summer. The application of natural or artificial cold to arrest decomposition during the various weather changes does not constitute preservation.

In United States v. Conkey & Co. (T. D. 40783), *supra,* frozen lamb was classified as fresh lamb under the provi-

sions of paragraph 702, Tariff Act of 1922, and claimed to be properly subject to classification as meats, prepared or preserved, under paragraph 706 of said act. The court therein concisely set forth in its headnotes the principles involved in that case which are as follows:

It is the common acceptance of the word "preserved," when applied to meat, that it has been so processed that its preservation is of permanent character. This court, and other courts, have frequently held that articles of importation, referred to in the tariff statutes as preserved, have had something more done to them to preserve them than merely to arrest change and decomposition while in transit. So frozen meat is not "preserved" within the meaning of that term in paragraph 706, Tariff Act of 1922.

\* \* \* \* \*

When used in the tariff acts, the word "prepared" is sometimes used synonymously with preserved, but, in a general sense, it implies that the fresh or raw material has undergone certain mechanical changes, such as cutting, slicing, grinding, mashing, mixing, etc., and usually implies that it has been advanced toward the condition in which it is used, and frequently such preparation either aids or accomplishes preservation. Frozen meat can not be regarded as "prepared," within the meaning of that word in paragraph 706, Tariff Act of 1922.

From the foregoing, it is well established by judicial interpretation that neither blanching, which is merely a necessary step for freezing, nor the freezing itself, which is not permanent, constitutes preparation or preservation. Accordingly, blanched frozen mushrooms are not for tariff purposes prepared or preserved.

In an action such as this, the plaintiff has a twofold burden of negating the classification and establishing the correct classification. While plain-

tiff has established certain differences in the use of frozen mushrooms compared to fresh mushrooms, it has failed to establish its claimed classification. The modern trend for frozen foods does, in my opinion, emphasize the distinction between fresh and frozen foods. However, the remedy for such a situation is legislative and not judicial. The court can only interpret the law as written.

A further indication that the claimed classification is erroneous is the rate of duty assessed by the tariff schedules. The specific rate of 3.2 cents per pound is on the "drained weight." This language appears to have been adopted for the first time with respect to mushrooms in the Tariff Act of 1930. The Supplement to Tariff Information on Items in Tariff Bill of 1930, which was compiled by the Tariff Commission, and printed for the use of the Finance Committee, United States Senate and the Committee on Ways and Means, House of Representatives (1930), makes the following comment at page 333:

> *Rates and comment.*—In the Senate bill mushrooms were given a compound rate of 10 cents per pound plus 45 per cent ad valorem, the "10 cents per pound" to be assessed under the "drained weight" in the case of canned mushrooms. The drained weight of a can of mushrooms is just half the entire weight of the contents, since by universal commercial practice one-half of a can of mushrooms is liquid and one-half mushrooms. Ten cents per pound on the drained weight is, therefore, equivalent to 5 cents per pound on the entire contents.
>
> Mushrooms shrink approximately 50 per cent in canning, so that 1 pound of fresh mushrooms is required to make one-half pound of canned mushrooms (drained weight).

■ It is therefore apparent that the term "prepared or preserved" mushrooms in the Tariff Act of 1930 covered only canned mushrooms. The utilization of this language in the Tariff Schedules of the United States must be presumed to be the same. Where there is no liquid to be drained in frozen mushrooms, such provision is not applicable.

In view of the foregoing, I find for defendant.

Judgment will be entered accordingly.