**GREEN GIANT CO., Appellant,**

v.

**The UNITED STATES,**
**Appellee.**

**Customs Appeal No. 5533.**

United States Court of Customs and Patent Appeals.

April 25, 1974.

Glad, Tuttle & White, San Francisco, Cal., attorneys of record, for appellant. Edward N. Glad, San Francisco, Cal., of counsel.

Irving Jaffe, Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Saul Davis, New York City, for the United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This is an appeal from the judgment of the United States Customs Court [1] overruling appellant's protest against the classification of certain blanched and frozen mushrooms as "fresh" mushrooms under item 144.10 of the Tariff Schedules of the United States (TSUS), and rejecting appellant's claim that the imported mushrooms are "otherwise prepared or preserved" under item 144.20, TSUS. We reverse.

The pertinent statutory provisions are as follows:

Mushrooms, fresh, or dried, or otherwise prepared or preserved:

| | | |
|---|---|---|
| 144.10 | Fresh ......................... | 5¢ per lb. + 25% ad val. |
| * * * | Dried ......................... | * * * |
| 144.20 | Otherwise prepared or preserved .. | 3.2¢ per lb. on drained wt. + 10% ad val. |

---

The imported merchandise consisted of mushrooms which were grown and processed in Taiwan. The processing consisted of: (a) washing, (b) sorting,

1. 70 Cust.Ct. 20, 355 F.Supp. 1397, C.D. 4401 (1973).

(c) trimming, (d) blanching, and (e) "quick-freezing." The most important steps regarding the present controversy are washing, blanching, and freezing.

The washing step was carried out in a wash tank where the fresh mushrooms were subjected to washing and to continuous movement by flowing water.

The blanching step was carried out in a machine called a "water blancher" which is accurately described in the opinion of the Customs Court. The mushrooms are subjected to water kept at a "rolling boil" (210°F.) for a period of 80 to 95 seconds. Mr. John L. Welch, Director of Food Science for appellant and a graduate chemist, testified (in response to questions from the bench) that the purpose of the blanching step was two-fold: first, to reduce the bacterial load in the mushrooms; and second, to inactivate the surface enzymes in the mushroom which otherwise cause excessive discoloration. Mr. Welch stated that mushrooms are 90 percent moisture or water, and he described them as being "very tender," "very easily bruised," and "very prone to degradation." Mr. Welch further testified (on voir dire examination by the Government trial attorney) that the heat absorbed by the mushrooms during the blanching step initiates a "browning reaction" (shown by photographic slides which are exhibits in the case) and a 10 to 12 percent loss of moisture. The following testimony by Mr. Welch (again in response to questions from the bench) was particularly graphic in describing the changes produced by the blanching step:

The Court: * * * would you say that the blanching produces a change in the natural condition of the mushroom?

The Witness: Yes, indeed.

The Court: In what respect?

The Witness: The tissue is disrupted. It would be like holding your hand in boiling water for a minute. You can imagine what would have occurred to the skin of your hand and also to the tissue beneath it. This also occurs to a mushroom when you blanch it.

Mr. John W. Moody, the Far East Operations Manager for appellant, fairly summarized the effects of the blanching step when he testified " * * * by the blanching process, you partially cook * * * and retard any deterioration of the mushroom from within * * *."

The freezing step was carried out in a "Lewis tunnel" which is accurately described in the opinion of the Customs Court. The temperature in the tunnel is maintained between minus 45°F. and minus 37°F. The washed, blanched and drained mushrooms are kept in the freezing tunnel for a period of 8 minutes which is sufficient to "quick-freeze" the individual mushrooms. The frozen mushrooms are then placed in polyethylene-lined shipping containers and transported to the United States via cold-storage vessels which maintain the frozen condition. The purpose of the freezing step is to increase the "shelf life"—the span of time that the mushrooms remain in an edible condition—from one day (raw mushrooms at room temperature) to two or three years (blanched and frozen mushrooms at minus 10°F.).

In addition to the foregoing evidence bearing on the processing of the mushrooms prior to importation, appellant also produced evidence of how the imported frozen mushrooms are used by consumers in the United States. Mrs. Mary E. Jordal, Director of Home Services for the Green Giant Co. and an experienced home economist, testified that the uses for the blanched and frozen mushrooms were much more limited than for raw mushrooms or canned mushrooms. This witness stated that the frozen mushrooms must be prepared by the homemaker according to the specific instructions found on the consumer carton, which was admitted as Plaintiff's Exhibit 1. The instructions referred to describe a single method of preparation—sautéing the frozen mushrooms in a saucepan over "high heat for 5 minutes" and then reducing the heat and cooking until the mushrooms are "golden brown." The instructions warn the consumer: "Keep frozen until ready

to use. Do not re-freeze." When asked if the frozen mushrooms could be thawed, and then sliced and used as a raw fresh mushroom, Mrs. Jordal responded:

> No, you definitely could not because if you were to simply thaw them at room temperature, they would become very squishy, rubbery, and watery and they would just look very spoiled. The appearance would be drastically altered.

The Customs Court overruled the importer's protest on three grounds: (1) that since prior judicial interpretation of the terms "preserved" and "prepared" had established that neither blanching nor freezing constituted preparation or preservation, then blanched and frozen mushrooms were not "prepared or preserved" for tariff purposes; (2) that while appellant had established certain differences in the use of frozen mushrooms compared to fresh mushrooms, nevertheless appellant had failed to establish its claimed classification (item 144.20, TSUS); and (3) that appellant's claimed classification was not correct because under it the rate of duty is on the "drained weight" and in the Tariff Act of 1930 this language was intended to refer to only canned mushrooms.

For the broad proposition that freezing alone does not constitute "preservation," the lower court cited and relied on three cases: Moscahlades Bros. v. United States, 6 Ct.Cust.Appls. 399, T.D. 35973 (1915), United States v. Conkey & Co., 12 Ct.Cust.Appls. 552, T.D. 40783 (1925), and John A. Conkey & Co. v. United States, 16 Ct.Cust.Appls. 120, T. D. 42766 (1928).

*Moscahlades* involved fish roe treated with salt and salt water, and the specific question was whether the merchandise was properly classified as "preserved roe of fish" or, as the importer claimed, as "eggs of roe" under different paragraphs of the Tariff Act of 1913. The predecessor of this court held that the salted fish roe were not "preserved" as that word was used in the statute.

The two other cases (United States v. Conkey & Co. and John A. Conkey & Co. v. United States) involved frozen lamb from Argentina, and the specific question was whether the merchandise was properly classified as "fresh lamb" or, as the importer claimed, as "meats, prepared or preserved, not specifically provided for" under different paragraphs of the Tariff Act of 1922. The court held in each case that the frozen lamb was properly classified as "fresh lamb" by the doctrine of similitude.

The present case is clearly distinguishable from these three cases for the simple reason that this case involves *more than* just freezing since the mushrooms were also washed and blanched. Being aware of these distinctions, the court below cited two additional cases for the proposition that blanching alone does not constitute preparation or preservation. The two additional cases are Border Brokerage Co., Inc. v. United States, 60 Cust.Ct. 487, 284 F.Supp. 806, C.D. 3437 (1968) and North Pacific Canners and Packers v. United States, 64 Cust.Ct. 551, C.D. 4034 (1970).

*Border Brokerage* involved a green vegetable described as "fiddlehead greens." The vegetable was blanched and frozen in Canada prior to importation. The merchandise was classified under item 137.70, TSUS, as "Vegetables, fresh, chilled, or frozen (but not reduced in size nor otherwise prepared or preserved): * * * Other," and one of the issues was "whether blanching as a step of the freezing process, in itself constitutes preparing or preserving *otherwise than by freezing.*" (emphasis added) The court found that the blanching was an essential step in the commercial process of freezing fiddlehead greens. Therefore, the court held that the blanching *could not in itself* constitute preparing or preserving *otherwise than by freezing* since the blanching was a part of the overall freezing process. Thus, *Border Brokerage* is authority for the narrow point, not involved here, that blanching, "as a step of the freezing process," does not in itself constitute preparing or preserving otherwise than by freezing.

*North Pacific Canners* involved blanched and frozen onions imported

from Holland. The merchandise was classified under item 138.00, TSUS, as "Vegetables, fresh, chilled, or frozen, and *cut, sliced, or otherwise reduced in size* (but not otherwise prepared or preserved)." (emphasis added) The sole issue was "whether the onions at bar, which were imported with the roots, stems and outer covering removed, are *cut, sliced, or otherwise reduced in size* within the intendment of item 138.00." (emphasis added) The court held, with one dissent, that plaintiff had failed to prove that the onions were not "cut, sliced, or otherwise reduced in size." Thus, *North Pacific Canners* is unrelated to the issue involved in the instant appeal. Viewing the five cases cited by the court below, we find that they are of no benefit in resolving the question of law here presented.

Turning now to the appellant's dual burden of negating the District Director's classification and establishing the proper classification, we agree with the court below that the evidence has established certain differences in the *use* of blanched and frozen mushrooms compared to fresh mushrooms. The testimony of Mrs. Jordal, the home economist, demonstrated this point very clearly. Furthermore, we conclude that the evidence established that the classification as "fresh mushrooms" was erroneous. In addition to the differences in use between frozen and fresh mushrooms, the uncontroverted evidence indicated that the term "fresh mushrooms" as used in commerce referred to a mushroom which is untreated in any way after picking and removing the root. Thus, the washing step and the blanching step take the instant mushrooms clearly beyond the "fresh" category. We are convinced that the effects of the blanching step are irreversible and sufficiently drastic that the mushrooms cannot properly be classified as "fresh mushrooms." We recognize that the term "fresh frozen" may be loosely applied to the imported merchandise, but in view of the evidence "fresh" is not an accurate descriptor of the washed, blanched and frozen mushrooms for tariff purposes.

With respect to appellant's second burden of establishing the correct classification, we conclude that the totality of the evidence establishes that washing, blanching, and freezing the mushrooms constitutes "preparation or preservation" for tariff purposes. The same evidence which demonstrates the impropriety of the "fresh mushrooms" classification establishes the correctness of the "otherwise prepared or preserved" classification.

Mr. Welch, the Director of Food Science for appellant, specifically testified on cross examination that the washing step is a preparation step in the case of mushrooms. This is consistent with the fact that the term "fresh mushrooms," as used in commerce, refers to mushrooms which are untreated in any way after picking and removing the root.

Mr. Welch further testified on cross examination that the process of blanching is a "preparation step" prior to freezing, which he described as a "preservation procedure." The Government's sole witness, Dr. Howard E. Bauman, who is the Vice President of Science and Technology for the Pillsbury Co., testified that blanching and freezing are "both preservation steps in that blanching will destroy the surface enzymes and the freezing will retard any additional changes in the product." We note the difference in terminology used by the two witnesses, but the important point is that the testimony of both witnesses demonstrates the correctness of appellant's claimed classification.

The Customs Court referred to the fact that the rate of duty for item 144.-20, TSUS, claimed by appellant is for the "drained weight" of the mushrooms. The reference to "drained weight" may have been specifically adopted in the Tariff Act of 1930 for canned mushrooms as the Customs Court opinion indicates. This fact, however, does not weaken appellant's case, since the evidence tends to support appellant's con-

tention that blanched and frozen mushrooms were not available commercially until 1965. In any event, the language of item 144.20 is "otherwise prepared or preserved," and this is clearly not restricted to only canned mushrooms. Since appellant's blanched and frozen mushrooms are imported in a drained status, there is no problem in applying the rate of duty claimed.

Our conclusion based on the entire record is that appellant has demonstrated the correctness of the claimed classification for the blanched and frozen mushrooms as "otherwise prepared or preserved." We think that this result is consistent with the intent of Congress and note that in Headnote 1(e), Subpart B [Edible Fruits], Part 9 [Edible Nuts and Fruits], of Schedule 1, TSUS, Congress has stated that "the term 'prepared or preserved' covers fruit which is dried, in brine, pickled, *frozen,* or otherwise prepared or preserved * * *." (emphasis added) Thus, in the case of edible fruit, Congress has equated freezing with "prepared or preserved," and we think the same equation holds true for blanched and frozen mushrooms. For the reasons set forth, the judgment of the Customs Court is reversed.

Reversed.