ORDERED that this action be, and the same hereby is, dismissed.

(C.D. 4762)

HISMOCO (AMERICAN) CO. v. UNITED STATES

Court No. 76-9-02065

Port of Los Angeles

(Decided August 28, 1978)

*Glad, Tuttle & White* (*Edward N. Glad* of counsel) for the plaintiff.
*Barbara Allen Babcock,* Assistant Attorney General (*Jerry P. Wiskin,* trial attorney), for the defendant.

MALETZ, Judge: This action, which is before the court on cross-motions for summary judgment, involves the dutiable status of merchandise consisting of dried salted plums, invoiced as "Dried Plums" which was exported from Hong Kong and entered at the port of Los Angeles in November 1973. The merchandise was classified by the government under item 149.28 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68-9, which covers plums, prunes, and prunelles, otherwise prepared or preserved, and assessed with duty at the rate of 17.5% ad valorem. Plaintiff chal-

lenges this classification and claims the imported merchandise is properly classifiable as "plums [prunes] dried" under item 149.26, dutiable at the rate of 2¢ per pound.

The provisions of TSUS pertinent to the classification and claim are as follows:

*Schedule 1, Part 9, Subpart B*

    *Subpart B headnote:*

      1. For the purposes of this part—

    \*        \*        \*        \*        \*        \*        \*

      (b) the term *"dried"* means dried, desiccated, or evaporated;

    \*        \*        \*        \*        \*        \*        \*

      (e) the term *"prepared or preserved"* covers fruit which is dried, in brine, pickled, frozen, or otherwise prepared or preserved \* \* \*.

    \*        \*        \*        \*        \*        \*        \*

Plums, prunes, and prunelles, fresh, or prepared or preserved:

    \*        \*        \*        \*        \*        \*        \*

| | | |
|---|---|---|
| 149. 24 | In brine | 0.1¢ per lb. |
| 149. 26 | Dried | 2¢ per lb. |
| 149. 28 | Otherwise prepared or preserved | 17.5% ad val. |

Against this background, plaintiff contends that the importations are nothing more than dried plums (prunes) and therefore are more specifically provided for under item 149.26 than under item 149.28. Defendant, on the other hand, argues that the merchandise is not "dried prunes" as that term is used in the commerce of the United States and, hence, is not within the common meaning of the tariff term "prunes \* \* \* dried," as used in item 149.26.[1] Rather, according to defendant, the imported merchandise is otherwise preserved than by drying, desiccation or evaporation, and was thus properly classified under item 149.28.

To the extent relevant to the present motions, the record consists of the pleadings; revised interrogatories directed by plaintiff to Francis M. Y. Wong, sales manager of the shipper herein, Mee Chun Canning Co. of Hong Kong; cross-interrogatories directed by defendant to Mr. Wong; five affidavits proffered by defendant;[2] and one

---

[1] "Prunes are certain varieties of plums, which have a firm flesh and a high sugar content that makes them adaptable to drying." *Summaries of Trade and Tariff Information* (Schedule 1, Vol. 8, 1969), p. 249. To the same effect prunes are defined in the standard dictionaries as plums capable of being or that have been dried without fermenting or spoiling. See, e.g., *Webster's New World Dictionary* (College Ed., 1966); *Webster's Third New International Dictionary* (1968); Winburne, *A Dictionary of Agricultural and Allied Terminology* (1962).

[2] Affidavits relied upon by defendant were executed by Paul A. Doemeny, a chemist at the Los Angeles Customs Laboratory; Dale C. Dunham, acting chief, Processed Products Branch, Fruit and Vegetable Quality Division, Food Safety and Quality Service, United States Department of Agriculture; Winthrop W. Dada, executive vice-president of DFA of California, a trade association of the dried fruit industry; Thomas K. Miller, vice-president for Corporate Operations, Diamond-Sunsweet, Inc., a growers' marketing cooperative, which receives dried prunes from growers and then processes, packages and markets the prunes for the cooperative members; and Martin W. Miller, professor of Food Science and Technology at the College of Agriculture and Environmental Sciences, University of California, Davis, California.

exhibit which is a copy of a March 20, 1973 letter ruling of Customs (ORR ruling 73–0364, abstracted as T.D. 73–262(25)) to the effect that prunes made from the fresh fruit which have been soaked in salt water and then sun dried are classifiable under item 149.28 as prunes otherwise prepared or preserved.

We now turn to the cross-motions which present the question as to whether the merchandise in issue is properly classifiable under item 149.26, as claimed by plaintiff, or under item 149.28, as assessed by the government. As to this, we note first that Mr. Wong, the sales manager of the shipper, the Mee Chun Canning Co. of Hong Kong (Mee Chun), described via answers to interrogatories and cross-interrogatories the manner in which the imported merchandise was processed prior to shipment to the United States. From his answers to these interrogatories and an affidavit of Mr. Doemeny, the following undisputed facts appear:

The imported merchandise consists of dried salted plums grown in Japan, Taiwan or Mainland China and purchased by Mee Chun in Hong Kong. Before shipment to Hong Kong, the fresh plums (prunes) were immersed in a salt water solution for at least 14 days and then put in the sun for drying. These semi-dried plums were shipped to Hong Kong where they were exposed to the sun for further drying by Mee Chun prior to shipment to the United States. If the semi-salted dry plums received by Mee Chun did not contain sufficient salt they were soaked in salt water for 14 days. On occasion, Mee Chun purchased fresh plums (prunes), in which case they were placed in dry salt at the ratio of 30–35 pounds of salt per 100 pounds of plums. The imported merchandise which was subjected to the two separate preparative or preservative operations of brining and drying contained 44.1% salt.[3]

It is in this context that we determine the common meaning of the term "dried prunes" bearing in mind that it is axiomatic in customs jurisprudence that the common meaning of a tariff term is presumed to be the same as its commercial meaning unless the contrary is shown. So considered, it is clear from the affidavits submitted by the defendant that the imported merchandise is *not* within the common meaning of the tariff term "prunes * * * dried" since the merchandise is not "dried prunes" as that term is used in the commerce of the United States. Thus the uncontradicted affidavits of Professor Miller, Mr. Dada, Mr. Dunham and Mr. Miller establish that brining is not a treatment normally involved in the drying of prunes in the United States. Rather, dry prunes result from the drying of fresh prune plums, by a process consisting of heat and air, or heat and water,

[3] Our appeals court and the standard dictionaries uniformly define "brine" to be "water saturated or strongly impregnated with salt." *Delapenha & Co.* v. *United States,* 6 Ct. Cust. Appls. 18, 19, T.D. 35252 (1915).

followed by dehydration. Chemical additives are not used other than as a mold inhibitor.

To similar import is the following statement with respect to "dried prunes" in the *Summaries of Trade and Tariff Information, supra:*

> Prunes are certain varieties of plums, which have a firm flesh and a high sugar content that makes them adaptable to drying. The bulk of the prunes grown in the United States are dried * * *. *Virtually all dried prunes are forced-air dried in dehydrating tunnels.* * * * [Emphasis added.]

The defendant's affiants are also in accord that a dried prune that had been salted prior to drying so as to contain approximately 44% salt—as is the case here—would not be a dried prune which would meet the standards for dried prunes as established by the United States Department of Agriculture.[4] Professor Miller stated that the high salt content would make the fruit more than mere dried prunes. Mr. Dada expressed the opinion that a prune product which had a salt content of 44% would not be a dried prune, but one "preserved in part due to its being salted prior to being dried." Professor Miller added that a product identified as "dried, salted prunes" is not merely a dried fruit product, but one which has been otherwise prepared or preserved due to brining.

Significantly, Mr. Wong also recognized that there is a difference between a "dried plum" and a "salted dried plum." In response to cross-interrogatory 10, Mr. Wong used different Chinese characters to identify the terms "dried plum" and "salted dried plum." Further, Mr. Wong conceded in response to cross-interrogatory 12 that: "It would be misleading and incorrect to describe 'salted dried plums' merely as 'dried plums.'" Thus, it cannot be disputed that labeling the instant merchandise as "plums * * * dried" would be misleading and incorrect.

It is to be added that plaintiff does not challenge the fact that the importations are preserved. Rather, it argues that as between the term "dried" and the term "otherwise prepared or preserved," the courts have always held that the former is more specific than the latter. In this connection, plaintiff places major reliance on the following language in *Kwan Yuen Company et al.* v. *United States,* 31 Cust. Ct. 192, 196, C.D. 1569 (1953):

* * * the term "dried" is more specific than the term "prepared or preserved," and merchandise which has been dried and additionally processed by such operations as cutting, shredding, or powdering, is classified as dried, rather than as prepared or preserved. *United States*

---

[4] 7 C.F.R. 52.3181 sets forth the Agriculture Department's product description of dried prunes:

Dried prunes are prepared from sound, properly matured prune plums from which the greater portion of moisture is removed by drying. The dried prunes are cleaned to assure a wholesome product; they may be treated with water or steam; and a safe and suitable preservative may be added.

v. *Aki Co.*, 12 Ct. Cust. Appls. 415, T.D. 40588 (fish, skinned, boned, and dried); *F. H. Shallus & Co.* v. *United States*, 18 C.C.P.A. (Customs) 332, T.D. 44585 (egg albumen, dried and broken into pieces); *United States* v. *Enbun Co.*, 19 C.C.P.A. (Customs) 79, T.D. 45224 (fish, dried and shaved or shredded); *United States* v. *D. L. Moss & Co.*, 22 C.C.P.A. (Customs) 249, T.D. 47159 (egg albumen, dried and powdered); *F. F. G. Harper & Co., Inc.* v. *United States*, 27 C.C.P.A (Customs) 9, C.A.D. 53 (flake whole egg and flake egg yolk, dehydrated, "screened" into flakes, and kept in freezing temperatures); *Jacques Missir* v. *United States*, 65 Treas. Dec. 941, T.D. 47093 (figs, boiled, dried, and subjected to steam and carbon dioxide); *Naumes Forwarding Service* v. *United States*, 24 Cust. Ct. 93, C.D. 1214 (chestnuts, dried and shelled).

But there is a fundamental difficulty with this argument. The difficulty is that the present importations, for reasons already discussed, do not fall within the common meaning of the term "dried prunes" as used in item 149.26 and hence no question of relative specificity is involved at all.

Nor does *F. F. G. Harper & Co., Inc., et al.* v. *United States*, 27 CCPA 9, C.A.D. 53 (1939)—on which plaintiff also relies—support plaintiff's position in the instant case. In *Harper*, dried and flaked egg yolk was held to be properly classifiable as dried egg yolk notwithstanding that the merchandise had been frozen. In *Harper* the processing done was normal and incidental to the accepted commercial procedure for producing the end product. 27 CCPA at 11. In the present case, however, the affidavits of Mr. Miller, Mr. Dada, Mr. Dunham and Professor Miller establish that the brining of the prunes is not a normal part of the commercial process used to produce dried prunes.[5]

In sum, since the prunes have undergone two separate and distinct preservative processes they were properly classified by the government under item 149.28 which covers plums, prunes, and prunelles "otherwise prepared or preserved" rather than as prunes "dried."

For the foregoing reasons, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the action is dismissed.

[5] In *Border Brokerage Company, Inc.* v. *United States*, 60 Cust. Ct. 487, C.D. 3437, 284 F. Supp. 806 (1968), this court held that the blanching of certain "Fiddlehead Greens" prior to freezing was a normal and necessary step of the commercial process of freezing fresh vegetables. Thus, the court in *Border Brokerage*.concluded that blanching did not make the imported vegetables "prepared other than by the process required for freezing." 60 Cust. Ct. at 489.

Similarly, *United States* v. *Enbun Co.*, 60 Treas. Dec. 733, T.D. 45224 (1931) (dried, unsalted fish which had been shaved or shredded, held to be "dried fish") and *F. H. Shallus & Co. et al.* v. *United States*, 59 Treas. Dec. 235, T.D. 44585 (1931) (egg albumen, dried and broken up, held to be "dried egg albumen") are also inapposite and do not compel a contrary result. The processing done in those cases was a normal, accepted commercial procedure *required* in the production of the end product. Clearly, the merchandise in the present action was preserved in part prior to its being dried due to its immersion in salt water. Thus, the brining procedure may not be considered incidental to the production of the end product, i.e., dry, salted prunes. For, as pointed out above, the brining step is not a normal accepted commercial procedure involved in the production of dried prunes.