WAKUNAGA OF AMERICA CO. LTD., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 79-4-00706

(Decided May 20, 1981)

*Glad, Tuttle & White* (*Edward N. Glad* at the trial and on the brief) for the plaintiff.

*Thomas S. Martin,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Cassell* at the trial; *James A. Resti,* on the brief) for the defendant.

WATSON, Judge: The defendant treated these mixtures of garlic in powder form and soybean powder as commingled merchandise under General Headnote 7 of the Tariff Schedules of the United States [1] (TSUS) and subjected them to duty at the highest rate

---

[1] General Headnote 7(a), TSUS:

*7. Commingling of Articles.* (a) Whenever articles subject to different rates of duty are so packed together or mingled that the quantity or value of each class of articles cannot be readily ascertained by customs officers (without physical segregation of the shipment or the contents of any entire package thereof), by one or more of the following means:

    (i) sampling,

    (ii) verification of packing lists or other documents filed at the time of entry, or

    (iii) evidence showing performance of commerical settlement tests generally accepted in the trade and filed in such time and manner as may be prescribed by regulations of the Secretary of Treasury, the commingled articles shall be subject to the highest rate of duty applicable to any part thereof unless the consignee or his agent segregates the articles pursuant to subdivision (b) hereof.

applicable to any part of them. The rate chosen was the 35 percent ad valorem provided under Item 140.60 of the TSUS for garlic reduced to flour.[2]

Plaintiff claims that the importations are properly classified as prepared vegetables under Item 141.81 of the TSUS,[3] dutiable at the rate of 17.5 percent ad valorem. In the alternative, plaintiff claims that the two components of the importations should have been segregated by weight, with the garlic portion dutiable as first mentioned above and the soybean portion dutiable at the rate of 13 percent ad valorem under Item 140.75 of the TSUS as other vegetables reduced to flour.[4]

The testimony established that the important ingredient in these mixtures is the garlic, which is present in the amount of 19 percent or 34 percent by weight. After harvest the garlic is aged in alcohol, filtered out and concentrated by a vacuum process. That extract, together with garlic powder produced by dehydration, was mixed with soybean powder. All this was done to subdue the garlic odor and permit the garlic to be incorporated into food-supplement capsules and tablets. For that purpose, after importation, it is mixed with brewer's yeast, kelp and alginic acid. It follows that the original mixing of the garlic and soybean powders was not the commingling of separately dutiable importations for which General Headnote 7 was designed. It was part of the process of preparing garlic for use as a food supplement by those who anticipate benefits from its ingestion.

---

[2] Item 140.60, TSUS, as modified by T.D. 68-9:

Subpart B

Vegetables, dried, desiccated, or dehydrated, whether or not reduced in size or reduced to flour (but not otherwise prepared or preserved):

\*     \*     \*     \*     \*     \*     \*

     Reduced to flour:

140.60      Garlic_____ 35% ad val.

\*     \*     \*     \*     \*     \*     \*

[3] Item 141.81, TSUS, as modified by T.D. 68-9:

Subpart C

Vegetables (whether or not reduced in size), packed in salt, in brine, pickled, or otherwise prepared or preserved (except vegetables in subpart B of this part):

\*     \*     \*     \*     \*     \*     \*

     Other_____

\*     \*     \*     \*     \*     \*     \*

141.81     Other_____ 17.5% ad val.

[4] Item 140.75, TSUS, as modified by T.D. 68-9:

Subpart B

Vegetables, dried, desiccated, or dehydrated, whether or not reduced in size or reduced to flour (but not otherwise prepared or preserved):

\*     \*     \*     \*     \*     c     \*

     Reduced to flour:

140.75      Other_____ 13% ad val.

The defendant's position here is similar to the rejected argument made by plaintiff in *Japan Food Corporation* v. *United States*, 57 Cust. Ct. 128, C.D. 2741 (1966), that dried fish and dried seaweed, in a mixture, ought to have been separately treated as commingled merchandise. The result would have been free entry for the seaweed portion, rather than classification of the whole as an unenumerated manufacture. The court, however, distinguished between mere commingling and the process of manufacture of a soup stock powder, a distinction which is relevant to this case.

Here the ingredients are processed and mixed for the purpose of preparing the garlic for its intended use and suppressing what some consider to be its noisome character. The aging and blending in measured proportions is a process of manufacture and results in an article with modified characteristics, differing from those of its separate constituents.

It is incorrect to treat such blending as a simple commingling. It is more properly characterized as part of the preparation of the garlic, a treatment which results in a prepared vegetable within the meaning of Item 141.81.

Defendant argues that the importation is not otherwise prepared or preserved within the meaning of Item 141.81 and contends that the provision is limited to articles which have been subjected to some process of preservation.

The defendant considers the drying and reduction of the importation to flour, which is clearly a process of preservation, to be germane only to Item 140.60, because of its preference for classification of the "commingled" ingredients under Item 140.60, which speaks specifically of garlic reduced to flour. Yet, if the importation is correctly viewed as a unitary product in which the garlic, in two forms, has been combined with the soybean flour the resulting article is indeed in a preserved condition within the meaning of Item 141.81, and the existence of a specific provision for the separate ingredients is irrelevant.

In any event, the garlic is also prepared within the meaning of Item 141.81. The treatment it has undergone, including aging in alcohol ond blending with soybean powder is a process of preparation. The term "prepared" is not a synonym for "preserved." A distinction was made at least as far back as the early part of this century. *Anderson & Co.* v. *United States*, 6 Ct. Cust. Appls. 108, T.D. 35344 (1915). The word "prepared" has often been used to describe foods containing ingredients which have no effect on preservation. For example, in *B. Westergaard & Co.* v. *United States*, 19 Ct. Cust. Appls. 299, T.D. 44298 (1932) meat balls and fish balls containing a quantity of vegetable binder were held to be classifiable as pre-

pared meat and prepared fish. In *United States* v. *A. Sahadi & Co., Inc.*, 23 CCPA 293, T.D. 48165 (1936) thin sheets of dried apricot pulp were smeared with olive oil and rolled up. They were held to be apricots otherwise prepared or preserved rather than fruit pastes or pulps.

While the cases involving the word "prepared" have arisen in a wide variety of circumstances and could be technically distinguished, the basic fact remains that the word originated and was normally used to describe edible substances which were not in their original, fresh condition and which had been processed or prepared for use by some means. *Lekas & Drivas* v. *United States*, 19 CCPA 389, T.D. 45523 (1932); *Vitelli* v. *United States*, 1 Ct. Cust. Appls. 237, T.D. 31274 (1911). See also, *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552, T.D. 40783 (1925); *Stone* v. *Downer & Co.* v. *United States*, 17 CCPA 34, T.D. 43323 (1929).

The classification considered correct by this court is not limited to vegetables which have only been preserved. The suggestion to that effect in *Border Brokerage Co. Inc.* v. *United States*, 60 Cust. Ct. 487, C.D. 3437 (1968) conflicted with the recent and remote history of the language and has since been clearly disapproved by our appellate court. *Green Giant Co.* v. *United States*, 61 CCPA 46, 495 F. 2d 775 (1974).

It can be added that if Congress had intended to limit the vegetables covered by this provision strictly to those which had been preserved it need not have used the additional word "prepared." Moreover, the legislative history makes it clear that the linking of the phrase "prepared and preserved" together with the specified processes of preservation was simply the result of the combination of two provisions which were formerly separate and not a restriction of the new provision to preserved vegetables. Tariff Classification Study, Schedule 1, Part 8, page 114 (1960).

For the reasons expressed above the court concludes that this merchandise was incorrectly treated as a commingling of two separately dutiable substances. It should have been considered a single product, which by its contents and processing was properly classifiable as a prepared vegetable. The court's conclusion makes it unnecessary to discuss plaintiff's alternative claim that even if the merchandise was considered to be commingled the defendant should have ascertained the amounts of the two ingredients and separately assessed them with the appropriate duty.

Judgment will enter accordingly.